IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

COREY CHRISTY,

        Plaintiff,

v.                                                                                         No. 13-CV-00281  WJ/CG

TRAVELERS INDEMNITY COMPANY
OF AMERICA,

        Defendant.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon the Plaintiff's Motion for Summary Judgment (Doc. 40) filed on April 8, 2014 as well as Defendant's Cross Motion for Summary Judgment (Doc. 47) filed on April 18, 2014. The Plaintiff Corey Christy alleges that Defendant, an automobile insurance carrier, refused to pay Plaintiff uninsured motorist pay after Plaintiff was struck on his bicycle by an uninsured motorist. Defendant responds that Plaintiff is not entitled to uninsured motorist pay for a number of reasons such as material and fraudulent misrepresentation, mutual and unilateral mistake, and breach of contract. As follows, Defendant also moves for summary judgment.

Upon reviewing the applicable law and arguments presented by both parties, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Defendant's Motion for Summary Judgment except as to the proper remedy which is addressed below.

### BACKGROUND

**I.**    **Undisputed Facts**[1]

---

[1] The facts here are supported by the parties' exhibits and are undisputed unless otherwise noted.

1

In 2007, Christy purchased a commercial general liability insurance policy ("the Policy") from Defendant Travelers Indemnity Company of America ("Defendant"). Lyle Love ("Love"), an employee of Woods Agency in Farmington, New Mexico, was the agent that actually sold the Policy to Plaintiff.

The Policy designated "K & D Oilfield Supply" ("K & D") as the named insured and listed the "Form of Business" as "Individual" to reflect that the business was a sole proprietorship. Plaintiff is the owner of "K & D," which at the time was a sole proprietorship. The Policy insured a truck used for the business as a "covered auto." The Policy included uninsured motorist ("UM") endorsement in the amount of $1,000,000.00, providing coverage for "sums" the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle" because of "[b]odily injury" sustained by an "insured" and caused by an "accident." By taking on the Policy, Plaintiff agreed to the provision entitled "Concealment, Misrepresentation or Fraud." Further, Plaintiff's wife, Juli Christy ("Juli"), purchased from the same agency a personal auto policy for the Plaintiff.

Subsequently, a lawyer recommended to Juli that she should incorporate the business to protect her family from personal liability for debts of the business. Both Plaintiff and his wife agreed to incorporate. So K & D incorporated on April 2008, naming Plaintiff and Juli as the officers of K & D Oilfield Supply, Inc. ("K & D, Inc."). Until after Plaintiff's accident on July 28, 2010, neither Plaintiff nor Juli notified Defendant or Woods Agency that K & D had incorporated.

Each year at renewal of the Policy, Plaintiff's insurance agency sent a cover letter stating "Please review your policy for accuracy and advise me if any changes or additional coverage are


needed." Plaintiff's insurance agent, Love, met with Plaintiff annually to provide advice related to coverage.

Had Plaintiff informed his agent or Defendant Travelers that his business had incorporated, Defendant would have cancelled and reissued the policy after evaluating whether the business met applicable underwriting guidelines and whether Defendant would insure the corporation. If so, Defendant and the agent would have issued a new policy designating the form of the business as a corporation. From an insurance standpoint, a business operating as a sole proprietorship is different from a corporation, and the exposure for a corporation is different than the exposure of an individual.

On July 28, 2010, Plaintiff was riding his bicycle when he was struck by a vehicle operated by an underinsured motorist. The tortfeasor paid his policy limits of $25,000. Plaintiff also received $100,000 in UM coverage under his Travelers personal auto policy. Plaintiff additionally made a claim to Defendant to recover under the UM provision of his commercial general liability insurance policy, claiming that he is a "Class 1" insured under the K & D Policy, which Defendant then denied.

## II.     Legal Standard

Summary judgment is appropriate only if " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co.,* 52 F.3d 1522, 1527 (10th Cir.1995) (quoting Fed.R.Civ.P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted). Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Id.* at 248, 106 S.Ct. 2505.

The parties' filing of cross-motions for summary judgment does not change this standard of review. *Bonham v. Indem. Ins. Co. of N. Am.*, 507 F. Supp. 2d 1196, 1206-07 (D.N.M. 2007). Where the parties file cross motions for summary judgment, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.,* 132 F.3d 1316, 1319 (10th Cir.1997). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth,* 608 F.2d 431, 433 (10th Cir.1979).

## DISCUSSION

I.  **Whether Plaintiff had a Duty to Notify Defendants that His Business had Incorporated**

A. Background Information

As stated in the undisputed facts, K & D was initially a sole proprietorship run by the Plaintiff. While Plaintiff's business incorporated in 2008, he never notified Defendant or Woods Agency of this change. In other words, even though K & D became K & D, Inc. in 2008, K & D, Inc. was still insured as a sole proprietorship on the day of Plaintiff's accident on July 2010.

Plaintiff would have had no chance at recovering any UM coverage had he updated his Policy to correctly reflect that K & D was now a corporation. Relevant parts of Plaintiff's Policy states that where the Named Insured is designated in the Declarations as a "corporation," "[a]nyone 'occupying' a covered 'auto'" shall be considered an "insured." Doc. 16, Ex. A

(Policy 2(a)). The only covered auto was Plaintiff's truck. Because Plaintiff was riding his bicycle when he got into the accident, he would not qualify as an "insured" under the Policy.

However, had Plaintiff's business still remained a sole proprietorship at the time of the accident, he *may* have had a chance at recovering UM damages. Relevant parts of the Policy states that where the Named Insured is designated in the Declarations as an "Individual," the "Named Insured" shall qualify as an "insured." Doc. 16, Ex. A (Policy 1(a)). New Mexico courts have recognized that a sole proprietorship is not an entity that is separate from its individual owner. *Jackson Constr., Inc. v. Smith*, 2012-NMCA-033, 277 P.3d 474 (noting that a sole proprietor is "a single individual who owns all the assets of a business, is solely liable for its debts and employs in the business no person other than himself"); *Junge v. John D. Morgan Constr. Co.*, 1994-NMCA-106, ¶ 22, 118 N.M. 457, 882 P.2d 48 (citing case law for the proposition that sole proprietors are not separate entities from an employer). Hence, even if the Declarations named "K & D Oilfield Supply" as the "Named Insured," Plaintiff may have qualified as an "insured" even when he was not "occupying" a covered "auto" because K & D Oilfield was the Named Insured and courts have equated a sole proprietorship with its sole proprietor.

As follows, the critical issue standing before this Court is whether Plaintiff had the duty to update his insurance company that his business had incorporated.

B. <u>Legal Standard on Determining the Existence of Duty</u>

"Whether a duty exists is a question of law for the courts to decide." *Herrera v. Quality Pontiac*, 2003–NMSC–018, ¶ 6, 134 N.M. 43, 73 P.3d 181. The Court should examine the undisputed facts of the case, including the language of the policy, to determine whether Plaintiff had a duty to update the insurer. *See Edward C. v. City of Albuquerque*, 2010–NMSC–043, ¶ 14,

148 N.M. 646, 241 P.3d 1086 (holding that the question of whether a party owed a duty to the other party "depends on the nature of the activity in question, the parties' relationship to the activity, and public policy considerations." *Id.; see also Rehders v. Allstate Ins. Co.*, 2006-NMCA-058, ¶ 35, 139 N.M. 536, 135 P.3d 237 (finding that "judgment against an insured is appropriate as a matter of law when the insured's expectations do not extend to the facts of the case, or when the insured's expectations conflict with the clear language of the policy itself"). However, "foreseeability is not a factor for courts to consider when determining the existence of a duty…" *Rodriguez v. Del Sol Shopping Center Associates*, L.P. 2014 WL 1831148, 1 (N.M., 2014).

The Court must also consider public policy when determining whether duty exists. *Id.* (stating that the court must "articulate specific policy reasons, unrelated to foreseeability considerations" when deciding whether a party has a duty; *see Edward C.*, 2010–NMSC–043, ¶ 14, 148 N.M. 646, 241 P.3d 1086. For example, in *Wrongful Death Estate of Archuleta v. Thi of New Mexico, LLC*, 31,950, 2014 WL 890613 (N.M. Ct. App. Jan. 9, 2014) *cert. denied,* 324 P.3d 375 (N.M. 2014), the court found that defendant owed plaintiff a duty of care because "New Mexico has a strong public policy of preventing the abuse and neglect of nursing home residents, as evidenced by the Legislature's enactment of the Resident Abuse and Neglect Act, NMSA 1978, §§ 30-47-1 to -10," where "§§ 30–47–3 to –6 criminaliz[es] the abuse and neglect of residents of skilled nursing and intermediate care facilities…"

C. Plaintiff Had a Duty to Update the Defendant

*Fact-based Analysis*

Plaintiff contends that he had no duty to notify Defendant about the incorporation of his business. In support, Plaintiff points out that (1) his policy terms do not explicitly state that

Plaintiff must inform Defendant that his business incorporated; (2) even if the agency's cover letter, which Woods Agency annually sent to Plaintiff before the renewal of his insurance contract, asked the insured to advise if any changes are needed, Plaintiff argues that because the cover letter is not part of the Policy, Plaintiff had no obligation to report the change; and (3) Roy Owen, the president and owner of Woods Agency at the time the Policy was issued to the Plaintiff, stated in an affidavit that "[t]he policy sold to 'K&D Oilfield' in 2008, and the policy renewed each year until 2012, did not require Mr. Christy to advise or inform Woods, or the issuer Travelers, if he formed a corporation." Doc. 45, Exhibit D at ¶8.

Defendant responds that Plaintiff did have the duty to inform Defendant or Woods Agency that his business incorporated. In support, Defendant points out that (1) while Plaintiff's policy terms do not explicitly state that he has a duty to report changes, the Policy itself contains a catch-all provision which states that the Policy "contains all the agreements between you and us concerning the insurance afforded." Doc. 16, Ex. A at 4. Defendant claims that this provision implicitly requires an insured to notify his insurer of any relevant changes that are not reflected in the policy terms; (2) each year, at renewal of the Policy, Woods Agency sent Plaintiff a cover letter stating, "[p]lease review your policy for accuracy and advise me if any changes or additional coverage are needed," Doc. 47-3, Ex. 1-4; (3) Plaintiff's insurance agency Lyle Love, who met with Plaintiff annually to advise him on coverage issues, testified that Plaintiff had the duty to inform Defendant that the form of business had changed from a sole proprietorship to a corporation. *See* Doc. 47, Ex. B at 91, lines 3-5; and (4) Plaintiff's expert, Lawrence Kales,[2] testified that it was Plaintiff's obligation to inform Defendant that his business had incorporated. Doc. 47, Ex. E at 27, lines 20-25.

---

[2] Lawrence Kales is a retired commercial underwriting officer with 40+ years of experience. He worked for Liberty Mutual Insurance from 1985-2003 in Arizona and New Mexico. From 2003 to the present, Kales consulted for Woods Insurance Service in Farmington, NM.

Plaintiff cites *Mueller v. Generali-US Branch*, 4 F. App'x 187, 190 (4th Cir. 2001), a Fourth Circuit case that contains facts nearly identical to this case. There, the plaintiff Mueller owned a business in the form of a sole proprietorship. She insured her business as a sole proprietorship under a policy which renewed on a year-to-year basis. Despite incorporating her business, Mueller did not notify her insurance company of the change because she "did not understand the change in corporate status to be significant." *Id.* at 189. Subsequently, Mueller's husband was killed in an automobile accident while driving a vehicle that had not been designated as a covered automobile under plaintiff's insurance policy. Under that policy, a sole proprietor is permitted to recover for injuries to any "family member." *Id.* As a "family member" of the deceased Mr. Mueller, plaintiff claimed she is entitled to uninsured motorist coverage because her policy still identified her business as a sole proprietorship.

The Fourth Circuit held in favor of the plaintiff. Notably, it rejected defendant's claim of mutual mistake because "[w]hile Generali was mistaken as to CFS's corporate status, Mueller was not. Mueller simply did not understand the significance of the change in status for purposes of her garage policy." *Id.* The court's finding that there was no mutual mistake implies that Mueller did not have a duty to report under the specific facts of the case.

While Plaintiff relies on *Mueller* to support his stance that Plaintiff had no duty, the Court finds critical differences in facts that distinguishes the instant case from *Mueller*. That is, there are no facts in *Mueller* that presents the slightest suggestion that Mueller was informed of a duty to report her business' changed status to her insurance company. However here, the undisputed facts show that Plaintiff's Policy contains a catch-all provision which places a contractual duty to update on the party with the changed circumstances. Furthermore, Plaintiff annually received a

cover letter[3] explicitly stating that duty. Because Plaintiff's Policy renewed in the beginning of 2008, 2009, and 2010, he received this notification three times before his accident in 2010. Unlike in *Mueller*, this Court cannot conclude that Plaintiff simply did not understand the significance of the change in his business' status because he received sufficient notification to be aware that he should inform Woods Agency or Defendant of the incorporation of his business. Hence, Plaintiff did have the duty to update under the facts of this case.

*Public Policy*
Moreover, there is a public policy reason to find that Plaintiff had a duty to update. The cover letter was sent to Plaintiff annually at the renewal of his policy, asking Plaintiff to update the Agency of any changes. While the letters are not part of the contract and therefore not contractually binding, it still tells us that Plaintiff should have been aware that he must report any changes, such as the incorporation of his business, to the insurer. It would be unconvincing for the Plaintiff to contend that despite the catch-all provision as well as receiving the cover letter in 2008, 2009, and again in 2010, he had no idea the insurer would have wanted him to provide information on changes to his business' status. If the Court were to find that Plaintiff had no duty to update even under these facts, the insurer would be unfairly penalized and the insured would be rewarded for making a material misrepresentation, in turn incentivizing others like Plaintiff to withhold information from insurers to derive greater benefits which honest disclosure would not have permitted.

---

[3] It is worth mentioning that Plaintiff cites *Benns v. Cont'l Cas. Co.*, 982 F.2d 461, 464 (10th Cir. 1993) to assert that the Court should not consider the cover letter because it is not part of the Policy. However, this case is not helpful. The *Benns* court decided not to rely on a certificate *not* because such extrinsic documents to the policy are off limits, but because (1) the court has "already concluded the terms of the policy are unambiguous," and (2) "nothing in the certificate gives rise to any ambiguity" because its contents are "consistent with the terms of the policy." *Id.* Here, the cover letter adds clarity to a point of contention on whether the catch-all provision placed a duty on Plaintiff to update the Defendant. As follows, this Court shall consider the cover letter.

Therefore, Plaintiff breached his duty to notify his insurer of the material change in his business' status.

**II.     Material Misrepresentation**

Defendant asserts that pursuant to the theories of (a) misrepresentation (fraudulent and material), (b) unilateral mistake, (c) mutual mistake, and (d) breach of contract, the Policy should be either (1) reformed to reflect that the business was actually a corporation, or (2) rescinded.[4]

*A.* Material Misrepresentation

"A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." Restatement (Second) of Contracts § 162 (1981). Inducement of a party's assent occurs when a party's misrepresentation "substantially contributes to his decision to manifest his assent." *Id.* § 476 (1981). "[T]he good faith with which the misrepresentation is made is immaterial… if misrepresentations be made, or information withheld, and such be material to the contract, then it makes no difference whether the party acted fraudulently, negligently, or innocently." *Prudential Ins. Co. of Am. v. Anaya*, 1967-NMSC-132, 78 N.M. 101, 104, 428 P.2d 640, 643.

Defendant asserts that Plaintiff's failure to notify his insurer about the incorporation of his business constitutes material misrepresentation because the type of business entity of an insured is material to the Defendant's decision to issue a commercial policy as well as to the

---

[4] There is a provision in the Plaintiff's policy titled, "Concealment, Misrepresentation or Fraud," which states that the Coverage Form under the Policy may be cancelled if obtained through material misrepresentation, fraudulent statements, omissions, or concealment of material fact, provided the named insured is given a 15 day notice prior to cancellation. However, this provision is not helpful as a remedy because the 15 day prior notice to cancel policy requirement assumes that Defendant discovers the misrepresentation before the accident occurs. Here, Plaintiff did not tell Defendant that his business is actually a corporation until after the accident. Cancelling the policy after the accident will not excuse Defendant from paying someone insured at the time of the accident.

renewal of that policy. Further, Defendant argues that it has the authority to decide which information is material. *See Rael v. Am. Estate Life Ins. Co.*, 1968-NMSC-126, 79 N.M. 379, 444 P.2d 290 (reasoning that "it was not for the plaintiff to decide what was material, but rather for the [insurance] company").

The Court agrees with the Defendant that Plaintiff has made a material misrepresentation. Plaintiff agreed as an undisputed fact that

> [i]f Plaintiff had informed his agent or Travelers that his business was incorporated, Travelers would have cancelled and reissued the policy after evaluating whether the business met applicable underwriting guidelines and whether Travelers would insure the corporation. If so, Travelers and the agent would have issued a new policy designating the form of the business as a corporation. *See* Doc. 50 (Traveler's Response brief), pg. 6, ¶ R; *see also* Doc. 52 (Plaintiff's Reply brief), pg. 1, ¶1.

Characterization of Plaintiff's business as a sole proprietorship or a corporation was material to Defendant's decision to enter into a binding contract (the Policy) with Plaintiff. Had Defendant realized that the business was now a corporation, both parties agree that Defendant would have cancelled the Policy and reissued a different one which reflects that his business is a corporation. In other words, had Defendant known, it would *not* have entered into the current version of the contract with the Plaintiff.

Because these facts fall squarely into the definition of material misrepresentation, the Court need not consider the other theories proffered by the Defendant.

**III. Remedies**

Defendant asks that the Policy be "Reformed, Rescinded or Voided" as a remedy for Plaintiff's material misrepresentation. Doc. 50 at 18.

The New Mexico Supreme Court held that either reformation or rescission of a contract may be an appropriate remedy in cases of material misrepresentation. *State ex rel. State Highway & Transp. Dep't v. Garley*, 1991-NMSC-008, ¶ 26, 111 N.M. 383, 806 P.2d 32; *see also*

*Prudential Ins. Co. of Am.*, 78 N.M. at 104 (allowing rescission of a contract "where there has been a misrepresentation of a material fact, the misrepresentation was made to be relied on, and has in fact been relied on...").

Here, Plaintiff misrepresented to the Defendant that his corporation was a sole proprietorship, a material misrepresentation on which the Defendant relied. Defendant did not offer much in its Response brief concerning the appropriate remedy and Plaintiff did not address the proper remedy at all. Accordingly, the Court having found there was a material misrepresentation by Plaintiff to Defendant, the parties are hereby directed to submit additional briefing not to exceed fifteen pages on the proper remedy in this case. The parties' additional briefing is to be electronically filed within fourteen days from the date of entry of this Memorandum Opinion and Order.

## CONCLUSION

Plaintiff had a duty to notify Defendant that his sole proprietorship had incorporated. Instead of meeting that duty, Plaintiff made a material misrepresentation which induced Defendant to renew its contract with Plaintiff from years 2008 to 2010. Accordingly, Plaintiff is not entitled to any uninsured motorist payment. Accordingly, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS in part the Defendant's Motion for Summary Judgment, with the parties to submit additional briefing as herein ordered.

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE